# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **TIMOTHY NIVER, HEATH TUBBS, and JUSTYN A. GRIMSLEY, individually and on behalf of all persons similarly situated,** | : : : : | **Civil Action No.: 2:14-cv-01599-JFC** |
|  | : | **Chief Judge Joy Flowers Conti** |
| **Plaintiffs,** | : : |  |
| **v.** | : : | **ELECTRONICALLY FILED** |
| **SPECIALTY OILFIELD SOLUTIONS, LTD., CALUMET SPECIALTY PRODUCTS PARTNERS, L.P., and ANCHOR DRILLING FLUIDS USA, INC.,** | : : : : : |  |
| **Defendants.** | : : |  |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................. 1

II.   PROCEDURAL HISTORY ............................................................................................. 3

      A.    The Notice Provisions in the Settlement Agreement Have Been Satisfied ........... 4

      B.    Response from Class Members .............................................................................. 6

III.  DISCUSSION ................................................................................................................. 7

      A.    Applicable Legal Standard For Final Approval of Class Action Settlement
            Pursuant to Fed R. Civ P. 23 ................................................................................. 7

      B.    Applicable Legal Standard For Final Approval of Collective Action Settlement
            Pursuant to 29 U.S.C. § 216(b) ............................................................................. 8

      C.    The Settlement Satisfies the Relevant Criterion for Approval ............................. 9

            1.    The Proposed Settlement Terms Are Fair, Reasonable and Adequate in
                  Relation to the Strength of Plaintiffs' Case and Risks and Expense of
                  Further Class Litigation in this Bona Fide Dispute .................................... 9

            2.    The Lawsuit Is At An Appropriate Point For Settlement ......................... 10

            3.    The Opinion of Experienced Counsel Supports Approval of the
                  Settlement, Which Resulted from Arm's-length Negotiations By Informed
                  and Experienced Counsel ......................................................................... 11

            4.    The Settlement Class' Response Supports the Settlement ........................ 12

      D.    The Proposed Settlement Furthers the Purpose of the FLSA .............................. 12

      E.    The Court Should Finally Certify the Settlement Class Under 29 U.S.C. § 216(b)
            ........................................................................................................................... 13

      F.    The Court Should Finally Certify the State Law Settlement Class Under Fed. R.
            Civ. P. 23 ............................................................................................................ 14

            1.    The State Law Settlement Class Is Sufficiently Numerous ..................... 15

            2.    The State Law Settlement Class Seeks Resolution of Common Questions
                  ............................................................................................................... 15

            3.    The Claims of the Named Plaintiffs Are Typical Of the State Law
                  Settlement Class ...................................................................................... 16

4.      Class Counsel and Plaintiffs Meet The Adequacy Requirements of the State Law Settlement Class ........................................................................ 16

5.      The State Law Settlement Class Satisfies the Predominance and Superiority Requirements of Fed. R. Civ. P. 23(b)(3) ............................ 17

G.      The Notice Provisions Were Followed and Provided Adequate Notice To The Class that Satisfies Due Process ............................................................. 17

H.      The Additional Service Awards and Payments To Named Plaintiffs Timothy Niver, Heath Tubbs, and Justyn Grimsley Are Justified and Should Be Approved ....................................................................................................................... 18

I.      The Request for Attorneys' Fees and Costs Should be Finally Approved .......... 20

IV.      CONCLUSION ........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-variant:small-caps">ASES</span>

*Bell Atl. Corp. v. Bolger*,
   2 F.3d 1304 (3d Cir. 1993)......................................................................................12

*Bredbenner v. Liberty Travel, Inc.*,
   No. 09-cv-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011)......................................19

*Brooklyn Sav. Bank v. O'Neil*,
   324 U.S. 697 (1945)................................................................................................13

*Brumley v. Camin Cargo Control, Inc.*,
   No. 08-1798, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) ...................................8, 9

*City of Detroit v. Grinnell Corp.*,
   356 F. Supp. 1380 (S.D.N.Y.1972), *aff'd in part and rev'd in part on other
   grounds*, 495 F.2d 448 (2d Cir. 1974) ...................................................................8

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000)............................................................................18

*Eichenholtz v. Brennan*,
   52 F.3d 478 (3d Cir. 1995).......................................................................................7

*General Tel. Co. of S.W. v. Falcon*,
   457 U.S. 147 (1982)................................................................................................16

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975)................................................................................8, 10

*In re Constar Int'l, Inc. Sec. Litig.*,
   585 F.3d 774 (3d Cir. 2009)...................................................................................14

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009)......................................................................................7

*In re Janney Montgomery Scott LLC Financial Consultant Litig.*,
   No. 06-cv-3202, 2009 WL 2137224 (E.D. Pa. Jul. 16, 2009) ...............................19

*In re Processed Egg Products Antitrust Litig.*,
   No. 08-md-2002, 2012 WL 2885924 (July 18, 2012) ...........................................12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)...................................................................................10

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. Dec. 22, 2003) ....................................................11

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)......................................................................................14

*Knepper v. Rite Aid Corp.*,
    675 F.3d 249 (3d Cir. 2012)......................................................................................17

*Lovett v. Connect America.com*,
    No. 14-2569, 2015 WL 5334261 (E.D. Pa. Sept. 14, 2015) ....................................13

*Lynn's Food Stores. Inc. v. U.S.*,
    679 F.2d 1350 (11th Cir. 1982) .................................................................................8

*Mullane v. Central Hanover Bank and Trust Co.*,
    339 U.S. 306 (1950)..................................................................................................17

*Sakalas v. Wilkes Barre Hosp. Co.*,
    No. 3:11-cv-0546, 2014 WL 1871919 (M.D. Pa. May 8, 2014) ..............................19

*Sand v. Greenberg*,
    No. 08-cv-7840, 2011 WL 7842602 (S.D.N.Y. Oct. 6, 2011)..................................19

*Singleton v. First Student Mgmt. LLC*,
    Civ. No. 13–1744, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) .................................13

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001)......................................................................................15

*Tenuto v. Transworld Sys., Inc.*,
    No. 99-cv-4228, 2002 WL 188569 (E.D. Pa. Jan. 31, 2002)...................................18

*Walsh v. Great Atlantic and Pacific Tea Co.*,
    96 F.R.D. 632 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983)......................................8

*Weiss v. York Hosp.*,
    745 F.2d 786 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985)..........................14

*Zavala v. Wal Mart Stores, Inc.*,
    691 F.3d 527 (3d Cir. 2012)......................................................................................13

## STATUTES AND OTHER AUTHORITIES

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq* ("FLSA"). ............................................. *passim*

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

## I.   <u>INTRODUCTION</u>

This class and collective action wage and hour lawsuit against Defendants Specialty Oilfield Solutions, Ltd. ("Specialty Oilfield"), Calumet Specialty Products Partners, L.P. ("Calumet"), and Anchor Drilling Fluids USA, Inc. ("Anchor Drilling") (collectively, "Defendants") has been settled, and Plaintiffs Timothy Niver ("Niver"), Heath Tubbs ("Tubbs"), and Justyn A. Grimsley ("Grimsley") (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their Unopposed Motion for Final Approval of the Settlement Agreement.[1]  The Court granted preliminary approval of this settlement on July 13, 2015, and set a Fairness Hearing for October 7, 2015.  (Dkt. Nos. 79, 81.)  Now, after Court-approved notice has been sent to Settlement Class Members,[2] final approval of this settlement is appropriate.

This is a wage and hour case alleging a nationwide violation of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and violation of Pennsylvania and Ohio state wage and hour laws.  Plaintiffs allege that Defendants have a policy and practice of failing to pay their Solids Control Technician ("SCT") employees overtime pay when they work more than forty (40) hours in a workweek.  Following the exchange of substantial informal discovery, extensive arm's-length settlement negotiations, and a full-day, in-person mediation session in Philadelphia, Pennsylvania before experienced mediator William H. Lemons, Esquire, the parties entered into a Settlement Agreement to resolve this action.  The Settlement includes a gross

---

[1]  A copy of the Settlement Agreement is attached to Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement as Exhibit 1 (hereinafter "Settlement Agreement").  (Dkt. No. 75-2.)

[2]  The Settlement Agreement provides that the Settlement Class includes "all current or former employees of Specialty Oilfield Solutions, Ltd., Calumet Specialty Products Partners, L.P., and/or Anchor Drilling Fluids USA, Inc. who performed work as Solids Control Technicians (also known as 'Dewatering Technicians') for any one of the Defendants in the United States at any time between November 21, 2011 and [July 13, 2015]" (the  date of the Court's Preliminary Approval Order).  Settlement Agreement ¶ 13(z).  The Settlement Class also includes the State Law Settlement Class, which is defined below.  *Id.* ¶ 13(bb).

payment of two million, one hundred thousand ($2,100,000.00) dollars (the "Gross Settlement Amount"), plus, in addition, the employer's share of applicable FICA and FUTA payroll taxes. None of the funds from the Gross Settlement Amount will revert to Defendants. This Gross Settlement Amount is fair, reasonable and extremely beneficial to the members of the Settlement Class.

In exchange, Plaintiffs Niver, Tubbs, and Grimsley, and the Settlement Class Members will dismiss their wage-related claims which emanate from and are based upon the same facts or allegations set forth in this actions with respect to the time that they were employed by Defendants as SCTs up to and including July 13, 2015, however, no Settlement Class Member will release their FLSA claim unless they submitted an Opt-In Consent Form. *See* Settlement Agreement ¶¶ 13(r); 13(v). In addition, in exchange for the enhancement payment, Named Plaintiffs have agreed to a broader general release of claims than the other Settlement Class Members. *Id.* ¶ 14(a) (describing the release given by Named Plaintiffs Niver, Tubbs, and Grimsley); ¶ 21(a).

Consistent with the Order granting preliminary approval, the Court-approved notice has been mailed to 206 Settlement Class Members. *See* Declaration of Troy Walitsky of Angeion Group, LLC ("Angeion Decl.") ¶¶ 9; 13. The forty-five (45) day notice period concluded on September 21, 2015. As of September 28, 2015, in addition to the 103 Settlement Class Members who had already submitted Opt-In Consent Forms, 60 additional Settlement Class Members have submitted timely Claim Forms. *Id.* ¶ 16. **As of September 28, 2015, the Settlement Administrator has received zero objections and zero requests for exclusion**.

Angeion Decl. ¶ 17.   Every Eligible Class Member[3] will receive a settlement award.   The average value of all settlement awards is currently estimated to be $6,539.63.   Angeion Decl. ¶ 22; Settlement Agreement ¶ 23(a)-(d) .

The proposed Settlement Agreement satisfies all of the criteria for final approval under federal law and is fair, reasonable and adequate.   Accordingly, Plaintiffs request that the Court issue an order:

1) Granting final approval of the proposed Settlement Agreement;

2) Granting final approval of the Settlement Class pursuant to 29 U.S.C. § 216(b) and the State Law Settlement Class pursuant to Fed. R. Civ. P. 23;

3) Finally approving Timothy Niver, Heath Tubbs, and Justyn Grimsley as the representatives of the Settlement Classes, and approving the $10,000.00 service award to Plaintiff Niver, and $5,000.00 service awards each to Plaintiffs Tubbs and Grimsley for their service to the Classes and in exchange for their additional released claims in favor of Defendants;

4) Approving Berger & Montague, P.C. as Class Counsel for the Settlement Classes, and approving Plaintiffs' request for attorneys' fees of $700,000 and costs in the amount of $15,336.86 as set forth in Plaintiffs' Motion for Attorneys' Fees and Costs, filed on September 8, 2015 (Dkt. Nos. 82-83);

5) Approving Angeion Group LLC as Settlement Administrator and finally approving the costs of settlement administration not to exceed $17,500.00; and

6) Dismissing this class and collective action with prejudice.

Defendants do not oppose this motion, and Plaintiffs have submitted a proposed final approval order for the Court's consideration.

## II.   PROCEDURAL HISTORY

Plaintiffs incorporate by reference the Procedural History and Terms of Settlement Sections, as set forth in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval.   (Dkt. No. 76 at 3-13.)

---

[3] Eligible Class Member means "all Settlement Class Members who do not timely opt out of the Settlement Class."   Settlement Agreement ¶ 13(i).

A.    <u>**The Notice Provisions in the Settlement Agreement Have Been Satisfied**</u>

Since the Court granted preliminary approval of the Settlement Agreement on July 13, 2015, the parties and the Settlement Administrator have fully complied with the notice provisions detailed in the Settlement Agreement.  *See* Settlement Agreement ¶¶ 15(b)-(i); 16-18.

Pursuant to the terms of the Settlement Agreement, the Settlement Administrator obtained a mailing address, email address, and a toll-free telephone number for Class Members to submit Claim Forms, Requests for Exclusion or Objections and undeliverable Class Notices, and to call with questions regarding the Settlement.  *See* Angeion Decl. ¶ 5.

On or about August 3, 2015, counsel for Defendants provided Angeion with a mailing list (the "Class List") containing the Settlement Class Members' names, last known physical and email addresses, last known telephone number, Social Security numbers, and dates and number of work weeks that each individual worked for Defendants as a SCT during the applicable Class Period for each Settlement Class Member.  *Id.* ¶ 6.  The Class List contained data for 205 Settlement Class Members, including the 103 Settlement Class Members who had already opted in to the case ("Opt-In Plaintiffs").  *Id.*  A draft of the Class Notice was prepared by Angeion and approved by the parties.  *Id.* ¶ 7.

Angeion processed and updated the mailing addresses in the Class List utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service.  *Id.* ¶ 8. The NCOA contains requested changes of address filed with the U.S. Postal Service.  *Id.*  In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Class Notice.  *Id.*

On August 7, 2015, Class Notices were mailed to 205 Settlement Class Members contained in the Class List via First Class mail.  *Id.* ¶ 9.  On the same day, Angeion sent Class Notices via email to the 108 Settlement Class Members for whom Angeion had email addresses.

4

*Id*.  The Class Notice advised Settlement Class Members that they could submit a Claim Form if they had not already opted in to the case, object to the settlement, or submit a written request for exclusion by September 21, 2015.  *Id.* ¶ 10.

On August 10, 2015, Class Counsel located and sent Angeion additional updated contact information for several of the 103 Opt-In Plaintiffs.  *Id.* ¶ 11.  Angeion immediately sent Class Notices via email to 46 Settlement Class Members and resent Class Notices via pre-paid, first-class U.S. mail to 7 Settlement Class Members.  *Id.*  On August 28, 2015, Angeion sent a duplicate copy of the Class Notice to the individuals who had not yet submitted Claim Forms in this action.  *Id.* ¶ 12.  Angeion sent 71 Class Notices via postage pre-paid, first-class U.S. mail, and 34 Class Notices via email.  *Id.*

On September 9, 2015, Angeion learned of one additional Settlement Class Member who Defendants had inadvertently excluded from the Class List.  *Id.* ¶ 14.  Angeion immediately sent notice to that individual via First Class mail and e-mail.  The individual submitted a Claim Form on September 9, 2015.  *Id.*

As of September 28, 2015, 18 Class Notices have been returned by the post office with no forwarding address attached.  *Id.* ¶ 14.  Angeion has performed address traces on all 18 undeliverable Class Notices returned without a forwarding address.  *Id*.  The address trace (often called a "skip trace") utilized the Class Member's name, previous address and Social Security number for locating a current address.  *Id*.  Following these efforts, the Class Notices were promptly re-mailed to those Class Members via First Class mail at the updated addresses.  *Id*. After these processes, a total of only 8 Class Notices were ultimately deemed undeliverable.  *Id.*

The Notices that were sent to Settlement Class Members contained the minimum and maximum amounts they were eligible to receive under the settlement if they submitted a timely

Claim Form.  *Id.* ¶ 15.  After receiving these Notices, certain Settlement Class Members contacted the Settlement Administrator and Class Counsel with questions regarding their workweeks used as a basis for their projected settlement awards.  The parties met and conferred and adjusted certain workweeks based on a further review of Defendants' records.  Settlement Class Members who submitted an Opt-In Consent Form will receive their Settlement Awards, which it is anticipated will remain in excess of the projected individual minimum settlement award amounts, with the exception of two Settlement Class Members.  *Id.*  These two Settlement Class Members' projected settlement amounts fell below the previously communicated minimum amounts based on an error in the initial calculations used, which attributed each with more workweeks than either Settlement Class Member could have worked for Defendants.   Both individuals have been alerted of the issue and have indicated that they accept the corrected projected settlement award amounts and wish to continue participating in the Settlement.  *Id.*

**B.**     **Response from Class Members**

The response to the settlement from Class Members has been overwhelmingly positive. Pursuant to the terms of the Settlement Agreement, the Settlement Administrator is responsible for receipt of all Claim Forms for the Settlement.  As of September 28, 2015, the Settlement Administrator received a total of 60 timely Claim Forms from Settlement Class Members, in addition to the 103 Opt-In Consent Forms previously received.  Angeion Decl. ¶ 16.

The total Opt-In Consent/Claim Forms received by the Settlement Administrator represents approximately 79.13% of the Eligible Class Members.  *Id.* ¶ 18.  Based on an estimated Net Settlement Amount of $1,347,163.14[4] and the current number of Eligible Class

---

[4] The estimated Net Settlement Fund amount was calculated by deducting the following amounts from the Gross Settlement Amount: attorneys' fees in the amount of $700,000; actual, current costs in the amount of $15,336.86; a service award to Plaintiff Niver in the amount of

Members, the average value of all settlement awards is currently estimated to be $6,539.63.  *Id.* ¶¶ 19; 22.

The Settlement Administrator is also responsible for receiving objections and requests for exclusion from the Settlement.  **As of September 28, 2015, the Settlement Administrator has not received any objections or requests for exclusion from the Settlement**.  *Id.* ¶ 17.

Pursuant to the terms of the Settlement Agreement, payment of settlement awards will be made within ten (10) business days after the Effective Date.  *See* Settlement Agreement ¶ 26. Settlement checks will be valid and negotiable for a period of 180 days.  *Id.* ¶ 27.  Additionally, if there are any amounts exceeding $25,000 from uncashed Settlement checks after the 180 day period, the monies shall be redistributed to Settlement Class Members.  *Id.* ¶ 28.  Any remaining amounts less than $25,000 from uncashed Settlement checks after the 180 day period, the monies will be paid to The Community Justice Project, the *cy pres* recipient designated in the Settlement Agreement.  *Id.*

## III.  DISCUSSION

Plaintiffs respectfully request that the Court enter the accompanying proposed order finally approving the class and collective action settlement.

### A.  Applicable Legal Standard For Final Approval of Class Action Settlement Pursuant to FED. R. CIV. P. 23

To grant final approval, the Court must conclude that the proposed settlement is fair, reasonable and adequate.  *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009); FED. R. CIV. P. 23(e).  Trial courts generally are afforded broad discretion in determining whether to approve a proposed class action settlement.  *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995).  This discretion is conferred in recognition that "[the] evaluation of [a] proposed

_____

$10,000.00, and $5,000.00 each to Plaintiffs Tubbs and Grimsley; and settlement administration costs not to exceed $17,500.00.  *See* Angeion Decl. ¶¶ 19-221.

settlement in this type of litigation ... requires an amalgam of delicate balancing, gross approximations and rough justice." *City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1385 (S.D.N.Y.1972), *aff'd in part and rev'd in part on other grounds*, 495 F.2d 448 (2d Cir. 1974). Thus, the Court considers whether the proposed settlement is within a "range of reasonableness" that experienced attorneys could accept in light of the relevant risks of the litigation. *See Walsh v. Great Atlantic and Pacific Tea Co.*, 96 F.R.D. 632, 642 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983).

The Third Circuit has set forth nine factors to be considered when determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation;(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the Defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ...

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotations and punctuation marks omitted).

### B.   Applicable Legal Standard For Final Approval of Collective Action Settlement Pursuant to 29 U.S.C. § 216(b)

This case is also brought pursuant to Section 216(b) of the FLSA.  When employees bring a private action under the FLSA, and present to the district court a proposed settlement pursuant to Section 216(b) of the FLSA, the district court may enter a stipulated judgment if it determines that the compromise reached "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *See Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citing *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982).

"In determining whether the compromise resolves a bona fide dispute, the Court must be reassured that the settlement reflect[s] a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching, and the bona fide dispute must be determined to be one over factual issues not legal issues such as the statute's coverage or applicability." *Brumley*, 2012 WL 1019337, at *2 (internal quotation omitted).

### C.   The Settlement Satisfies the Relevant Criterion for Approval

#### 1.   The Proposed Settlement Terms Are Fair, Reasonable and Adequate in Relation to the Strength of Plaintiffs' Case and Risks and Expense of Further Class Litigation in this *Bona Fide* Dispute

Defendants have agreed to pay a large gross settlement amount -- $2.1 million -- in settlement of the claims of the Settlement Class.  Settlement Class Members will receive an average recovery of approximately $6,803.85, even after settlement administration costs, the Named Plaintiffs' service awards, and attorneys' fees and costs are deducted.  *See* Angeion Decl. ¶¶ 19; 22.  The Settlement represents a high percentage of the maximum expected recovery if Plaintiffs prevailed.  More specifically, the Gross Settlement Amount is based on a careful and detailed analysis of each workweek that each Class Member worked for Defendants during the relevant time period.  The Gross Settlement Amount represents more than 100% of the actual unpaid overtime compensation owed to Settlement Class Members, and the Settlement Class Members are expected to receive approximately 100% of their unpaid overtime damages.  The entirety of the Net Settlement Fund will be disbursed to all Eligible Class Members, and there will be no reversion of funds to Defendants.

Moreover, as part of the litigation and settlement discussions, Defendants have committed to changing their pay policy applicable to their SCT workforce to begin paying them an hourly rate and overtime pay for hours worked in excess of forty.  There are currently over

9

fifty-five (55) SCTs working in the Specialty division alone. While it is impossible to calculate the precise value of the entitlement to overtime hours, the value of these future overtime payments is substantial, and furthers the purpose of the FLSA. This change will benefit both members of the Settlement Classes and Defendants' SCT workforce going forward.

Plaintiffs believe that the Settlement is an excellent result for the members of the Settlement Class. Defendants were prepared to vigorously defend this action by asserting a number of defenses to liability, and disputing that the claims presented were appropriate for class certification or FLSA collective action treatment. Defendants also disputed the number of hours that the Class Members worked. Moreover, in a class action proceeding, complex procedural issues may frequently arise, offering constant challenges to the propriety of the Class. Accordingly, the risks and costs of continued litigation are likely to be much higher than those of a typical single party case.

Given the substantial monetary settlement that was negotiated, continuing the litigation of this case and exposing the case to those risks is not warranted. Thus, the *Girsh* factors (the complexity, expense and likely duration of the litigation; the risks of establishing liability and damages; and the range of reasonableness of the settlement fund in light of the best possible recovery given the attendant risks of litigation) strongly support final approval of this Settlement.

### 2.     The Lawsuit Is At An Appropriate Point For Settlement

In this case, the proposed settlement was reached after (1) substantial informal discovery, which included exchanging documents and a factual and legal investigation by Class Counsel, and (2) a full-day in-person mediation session, which included follow up arm's-length negotiations between counsel for the parties that were overseen by the mediator. There was sufficient investigation and discovery conducted in this matter to allow counsel and the Court to act intelligently concerning the settlement of the claims. *See In re Prudential Ins. Co. Am. Sales*

10

*Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998) (finding class counsel's "vigorous litigation," pursuit of discovery, and use of informal discovery supported settlement).

Notably, the parties exchanged documentation, records and information that allowed them to determine the losses that the Class Members suffered as a result of the alleged improprieties at issue in this case. Defendants produced critical payroll records that helped to inform the parties' decision to settle. Once these documents were analyzed by the parties, along with the other discovery provided and interviews undertaken, additional discovery would not likely have changed the outcome of the Settlement. The state of the proceedings supports final approval of the Settlement.

### 3. The Opinion of Experienced Counsel Supports Approval of the Settlement, Which Resulted from Arm's-length Negotiations By Informed and Experienced Counsel

The Settlement was the result of one intense in-person mediation session between the parties with the assistance of skilled mediator, William H. Lemons, on June 5, 2015. The participation by such neutral facilitator, and the adversarial nature of those negotiations illustrates that this case was resolved and settled only after sufficient arm's-length bargaining. Counsel for both sides are highly experienced in wage and hour class action litigation. The Declarations of Class Counsel filed in support of the Motion for Attorneys' Fees and Costs describes Class Counsel's experience in this area. (Dkt. No. 84-1.) These experienced wage and hour attorneys believe that this case is appropriate for settlement and that the substantial sum of $2.1 million will provide significant relief to Plaintiffs and Settlement Class Members. *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. Dec. 22, 2003) ("settlement negotiations took place at arm's-length between highly experience[d] and competent counsel. Their assessment of the settlement as fair and reasonable is entitled to considerable weight").

### 4. The Settlement Class' Response Supports the Settlement

Finally, the Settlement Class Members' collective response to the Settlement overwhelmingly supports final approval. With the deadline for making objections and opting out of the Settlement passed for all, it is highly significant that there have been ***zero objections and zero requests for exclusion*** to the proposed Settlement. *See* Angeion Decl. ¶ 17. This overwhelmingly positive response from the Settlement Class demonstrates the fairness and adequacy of the Settlement's terms. Nothing in the response of Class Members warrants denial of the final approval of the settlement. Given the Court's preliminary approval and the complete absence of any objections by Class Members, final approval of the settlement is warranted. *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993) (noting that it is generally appropriate to assume that "silence constitutes tacit consent to the agreement" in the class settlement context); *In re Processed Egg Products Antitrust Litig.*, No. 08-md-2002, 2012 WL 2885924, at *18 (July 18, 2012) (holding that no objections supports final approval of settlement).

### D.   The Proposed Settlement Furthers the Purpose of the FLSA

Finally, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. *Compare Brown*, 2013 WL 5408575, at *3 (finding settlement agreement frustrated the implementation of the FLSA when it required the plaintiffs to keep the terms of the settlement confidential or risk forfeiting their awards) *with Chickie's & Pete's Wage and Hour Litig.*, 2014 WL 911718, at *3 (holding that provision limiting press coverage does not frustrate the purpose of the FLSA).

Indeed, the settlement furthers the purposes of the FLSA by providing Eligible Class Members with substantial recovery for their unpaid overtime, that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been

12

unable to recover.  *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

**E.  The Court Should Finally Certify the Settlement Class Under 29 U.S.C. § 216(b)**

In the context of a collective action settlement, the Court must complete the second stage of certification and determine whether Plaintiffs are similarly situated under Section 216(b) of the FLSA to finally certify the collective action.  *See Lovett v. Connect America.com*, No. 14-2569, 2015 WL 5334261, *2 (E.D. Pa. Sept. 14, 2015); *Singleton v. First Student Mgmt. LLC*, Civ. No. 13–1744, 2014 WL 3865853, at *3 (D.N.J. Aug. 6, 2014) (certifying collective action for settlement).  To determine whether members of the collective action are similarly situated, the Court must evaluate a number of factors, including but not limited to: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 536-7 (3d Cir. 2012).  The Court must "consider[ ] all the relevant factors and make[ ] a factual determination on a case-by-case basis."  *Id.* at 536.

Here, all of the Settlement Class Members are current or former employees of Defendants, having worked for Defendants at some point during the applicable time period, who held the title of Solids Control Technician (also known as Dewatering Technicians) and who

were paid on a salary basis.  Although they allege differing amounts of owed wages and differing numbers of hours worked, all allege that when they worked more than 40 hours per week they were not paid overtime.  For settlement purposes only, Defendants have agreed that the requisites for final certification are met.  Accordingly, the Court should grant final certification to the Settlement Class under Section 216(b) of the FLSA.

### F.   The Court Should Finally Certify the State Law Settlement Class Under FED. R. CIV. P. 23

In addition, the State Law Settlement Class should be finally certified.  A case may be certified as a class action under FED. R. CIV. P. 23 only when:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985).  These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004).

Federal Rule of Civil Procedure 23(b)(3) permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   FED. R. CIV. P. 23(b)(3).   These dual requirements are commonly referred to as "predominance" and "superiority," respectively.  *See, e.g.*, *In re Constar Int'l, Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).

The Court preliminarily certified the State Law Settlement Class under Rule 23(b)(3) for settlement purposes (Dkt. No. 79), and Plaintiffs now move for final certification of a the State

Law Settlement Class under Rule 23(b)(3).  Pursuant to the terms of the Settlement Agreement, Defendants have stipulated that, for settlement purposes only, the requisites for establishing class certification pursuant to FED. R. CIV. P. 23 with respect to the State Law Settlement Class Members, have been and are met.  *See* Settlement Agreement ¶ 11.

### 1.      The State Law Settlement Class Is Sufficiently Numerous

To meet the numerosity requirement of FED. R. CIV. P. 23(a)(1), "the class size only need be large enough that it makes joinder impracticable."  *Fry*, 198 F.R.D. at 467.  The State Law Settlement Class here meets the numerosity requirement because at least 170 State Law Settlement Class Members have been identified through Defendants' payroll records.  Each of the State Law Settlement Class Members will receive a settlement award.  *See* Settlement Agreement ¶¶ 23(a)-(d).

### 2.      The State Law Settlement Class Seeks Resolution of Common Questions

The commonality requirement of FED. R. CIV. P. 23(a)(2) is satisfied if the named Plaintiffs shares at least one question of fact or law with the grievances of the prospective class.  *See Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001).  Here, Plaintiffs and the State Law Settlement Class Members' claims arise from Defendants' common pay policies.  The alleged common issues include, without limitation: (1) whether State Law Settlement Class Members were entitled to overtime compensation for their hours worked; (2) whether State Law Settlement Class Members were similarly denied compensation for all hours worked; and (3) whether Defendants' policy of paying a salary plus day rate to State Law Settlement Class Members violated Pennsylvania and/or Ohio state law.  These sample common questions of law and fact, which Plaintiffs contend apply uniformly to all members of the proposed State Law Settlement Class, are sufficient to satisfy the commonality requirement.

### 3.     The Claims of the Named Plaintiffs Are Typical Of the State Law Settlement Class

The typicality requirement of FED. R. CIV. P. 23(a)(3) is satisfied for purposes of approving the settlement because Plaintiffs' claims are reasonably coextensive with those of absent class members, and because Plaintiffs possess the same interest and suffered the same injury as the absent class members.  *See Fry*, 198 F.R.D. at 468; *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982).  Plaintiffs' claims for unpaid overtime compensation during weeks when they worked as a non-exempt SCTs are typical of the claims of the Class.

### 4.     Class Counsel and Plaintiffs Meet The Adequacy Requirements of the State Law Settlement Class

To meet the adequacy requirement of FED. R. CIV. P. 23(a)(4), a named Plaintiff must show: 1) that he or she has the ability and incentive to represent the claims of the class vigorously; 2) has obtained adequate counsel; and 3) that there is no conflict between the individual's claims and those asserted on behalf of the class.  *Fry*, 198 F.R.D. at 469.

The adequacy of representation requirement is met here because Plaintiffs have the same interests as the State Law Settlement Class Members.  There is no conflict between Plaintiffs and the State Law Settlement Class in this case, and Plaintiffs' claims are in line with the claims of the Class.  Plaintiffs have aggressively and competently asserted the interests of the State Law Settlement Class, and Plaintiffs' counsel is skilled and experienced in wage and hour class action litigation, as set forth in the declaration of Class Counsel submitted with Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement (Dkt. Nos. 75-77), and Plaintiffs' Unopposed Motion for Attorney's Fees and Costs (Dkt. Nos. 82-84).

**5.      The State Law Settlement Class Satisfies the Predominance and Superiority Requirements of Fed. R. Civ. P. 23(b)(3)**

Under FED. R. CIV. P. 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

For the reasons discussed above, the State Law Settlement Class satisfies the predominance requirement.  Moreover, allowing the State Law Settlement Class Members the opportunity to participate in a class settlement that yields an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court. It is also superior to the alternative of leaving these important labor rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis.  Moreover, the Third Circuit has ruled that there is no reason to preclude federal jurisdiction over class actions asserting claims under state statutory wage and overtime laws paralleling the FLSA.  *See Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012).

Accordingly, Plaintiffs respectfully request that the Court finally certify the State Law Settlement Class for settlement purposes only.

**G.      The Notice Provisions Were Followed and Provided Adequate Notice To The Class that Satisfies Due Process**

The U.S. Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the proposed Notice and manner of distribution negotiated and agreed upon by the parties was "the best notice practicable," as required under FED. R. CIV. P. 23(c)(2)(B).  As

described above, the Notice provisions of the Settlement Agreement were all followed by the Settlement Administrator.  State Law Settlement Class Members (who were previously sent opt-in consent forms when the notice was sent for litigation purposes) have had an additional opportunity to participate in the Settlement.  Approximately 79.13% of the 206 Settlement Class Members who received the Class Notice during the Settlement process have returned Claim Forms.  *See* Angeion Decl. ¶ 18.  All of the 206 Eligible Class Members will receive monetary compensation.  *Id.* ¶¶ 20-22.  Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.  CONTE & NEWBERG at §§ 8.21 and 8.39; MANUAL FOR COMPLEX LITIG. at § 21.311 and 21.312.

> **H.    The Additional Service Awards and Payments To Named Plaintiffs Timothy Niver, Heath Tubbs, and Justyn Grimsley Are Justified and Should Be Approved**

Defendants agreed to pay Named Plaintiff Niver a $10,000 service award and Plaintiffs Tubbs and Grimsley $5,000 service awards each for their efforts in bringing and prosecuting this matter, and in addition, for their general release of all waivable claims against Defendants arising out of their employment.  *See* Settlement Agreement ¶¶ 14(a), 21(a).  This amount will be paid in addition to their recovery of unpaid overtime for the time when they worked as SCTs for Defendants.

"[C]ourts routinely approve incentive awards to compensate named Plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000).  It is particularly appropriate to compensate named representative Plaintiffs with incentive awards where they have actively assisted Plaintiffs' counsel in their prosecution of the litigation for the benefit of a class. *Tenuto v. Transworld Sys., Inc.*, No. 99-cv-4228, 2002 WL 188569, at *5 (E.D. Pa. Jan. 31, 2002).

Here, the proposed additional payment is justified by the benefits that the Named Plaintiffs' diligent efforts have brought to the Settlement Class Members. As described in Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement, Plaintiffs took the significant risk of coming forward to represent the interests of their fellow employees. They worked with Class Counsel, providing background information about their employment, about Defendants' policies and practices and about the allegations in this lawsuit. They risked their reputation in the community and in their place of employment in order to participate in this case on behalf of the Classes. *See Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that Plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation").

The additional payments requested in this case are also in line with those approved in wage and hour collective and class actions throughout the Third Circuit. *See, e.g.*, *Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919, at *5 (M.D. Pa. May 8, 2014) ("Court believes that the proposed total award of $7,500.00 (or 1.57%) of a $475,000.00 settlement fund is well-deserved and not out of proportion to the level of [named Plaintiff's] cooperation. Such an award would not significantly reduce compensation for the other class members, nor is it out of the mainstream for class action service awards in the Third Circuit."); *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745, at *22-24 (D.N.J. Apr. 8, 2011) (approving service payments of $10,000 to each of eight named Plaintiffs in wage and hour case, and citing 2006 empirical study that found average award per class representative to be $16,000); *In re Janney Montgomery Scott LLC Financial Consultant Litig.*, No. 06-cv-3202,

19

2009 WL 2137224, at *12 (E.D. Pa. Jul. 16, 2009) (approving $20,000 enhancement awards for each of three named Plaintiffs in wage and hour settlement).

For these reasons, the additional payments to Named Plaintiffs Niver, Tubbs, and Grimsley should be finally approved as fair and reasonable.

## I.      The Request for Attorneys' Fees and Costs Should be Finally Approved

On September 8, 2015, Plaintiffs' filed their Unopposed Motion for Approval of Attorneys' Fees and Costs.  (Dkt. Nos. 82-83.)  Since the date that Plaintiffs filed their Motion for Attorneys' Fees and Costs, not a single Settlement Class Member has submitted an objection to the Settlement or to the requested fees or costs.  In addition to the reasons stated in Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs, the lack of objections further supports that an award for attorneys' fees in the amount of $700,000.00 (one-third of the Gross Settlement Amount), and reimbursement Class Counsel's costs, which are currently $15,336.86, should be finally approved.

## IV.    CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court enter a final order approving this Settlement as fair, reasonable and adequate, and dismissing this case with prejudice.

Dated: September 30, 2015                    Respectfully submitted,

s/ Shanon J. Carson
Shanon J. Carson (PA 85957)
Sarah R. Schalman-Bergen (PA 206211)
Alexandra K. Piazza (PA 315240)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-4656
scarson@bm.net

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed on the ECF docket and is available for viewing and download on this 30th day of September, 2015.

s/ Shanon J. Carson
Shanon J. Carson

21